AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| TONY YATES | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 2026 - present _____ in the county of _____ Montgomery _____ in the
_____ Southern _____ District of _____ Ohio _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(A) | Conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing a detectable abmount of cocaine, a Schedule II controlled substance. |
| 18 U.S.C. § 924(c) | Use and caryying of a firearm during and in relation to a drug trafficking crime. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Matthew Voytek*
*Complainant's signature*

MATTHEW VOYTEK, SA ATF
*Printed name and title*

Sworn to before me and signed in my presence via telephone.

Date: 6/12/26

*Judge's signature*

City and state: DAYTON, OHIO

PETER B. SILVAIN, JR. U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Matthew Voytek, hereby duly sworn, declare and state:

## INTRODUCTION

1.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 2021. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and the National Firearms Act of 1932. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

## PURPOSE OF AFFIDAVIT

2.  I make this affidavit in support of criminal complaints and arrest warrants against:

a.  Eucelf Taste Jr. for violations of: 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (knowing distribution of 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance); 21 U.S.C. §§ 846 and 841(b)(1)(A) (conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance); 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime); 18 U.S.C. § 922(o) (possession of a machine gun);

b.  Anthony Scott for violations of 21 U.S.C. §§ 846 and 841(b)(1)(A) (conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of a mixture

1

or substance containing a detectable amount of cocaine, a Schedule II controlled substance); 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime); 18 U.S.C. § 922(o) (possession of a machine gun).

      c.     Tony Yates for violations of 21 U.S.C. §§ 846 and 841(b)(1)(A) (conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance); 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime);

3.     I have not included every detail of the investigation, but only information necessary to establish probable cause for the above-requested criminal complaints.

## PROBABLE CAUSE

### A.    Introduction

4.     During May and June 2026, ATF identified Eucelf Taste Jr. as a drug and firearm trafficker operating in southern Ohio. As detailed below, over that time, Taste sold to undercover law enforcement officers (UCs) over 40 grams of a mixture or substance containing a detectable amount of fentanyl. With the help of Anthony Scott, Taste also sold a machinegun to the UCs. During these various transactions, Taste volunteered that he was a member of the 41 Boyz, a violent drug trafficking organization that law enforcement knows to offer protection services to other drug dealers. When a UC inquired if Taste would be willing to provide those services for a purported 5-kilogram drug deal in the Dayton, Ohio area, Taste accepted the offer, indicating that he and others would willingly provide armed security at the drug deal. Consistent with that promise, on or about June 9, 2026, Taste, Scott, and a third man, Tony Yates, came armed with firearms and served as protection for purported drug traffickers allegedly selling 5 kilograms of cocaine to another drug organization.

2

**B.**     <u>With the Assistance of Others, Taste Sells Contraband to UCs.</u>

5.     During May 2026, while posing as drug traffickers, UCs met in Dayton, Ohio, an individual named Dalontay Martin. During recorded conversations, Martin advised that he had access to a source of drug supply who dealt fentanyl. To corroborate his claim, Martin provided the UCs with two small drug samples, subsequent fields test of which confirmed them as fentanyl. Based on the samples, the UCs expressed interest buying more drugs from Martin and his source. Consistent with that request, Martin sent his supplier – Taste – to meet with the UCs.

6.     On or about May 21, 2026, Taste arrived at a meeting location in the Dayton, Ohio area and proceeded to negotiate a drug sale with the UCs. (Officers confirmed Taste's identity from known pictures of him). Taste ultimately agreed to sell the UCs approximately 4 ounces of fentanyl, which he provided to them at that time in exchange for cash. Subsequent field tests confirmed that this over 40 gram mixture contained fentanyl. Taste represented that his product was of good quality. During conversations with the UCs, Taste acknowledged that he was wearing an ankle monitor as he was on bond from a state matter. When the UCs asked Taste if he sold guns, Taste indicated that he did. After some additional conversation, Taste briefly left the meet location and returned a short time later with a handgun that he sold to the UCs in exchange for cash.

7.     On or about May 28, 2026, Taste met with the UCs once more at a location in Dayton, Ohio, to complete another sale of drugs and firearms. On this occasion, Taste arrived in a car with a man, later identified as Anthony Scott. (Law enforcement identified Scott from known pictures of him). Taste exited the car while Scott remained within it. After briefly engaging with a UC, Taste returned to the car at which time Scott handed Taste two firearms – a

3

Glock pistol and a second Glock that a conversion device or switch attached to it.  (Based on my training and experience, a conversion device or switch renders a semi-automatic firearm fully automatic and thus a machinegun).  Taste ultimately sold the machinegun and Glock to the UCs in exchange for cash.  Taste also delivered to the UCs approximately 28 grams of a substance that later field tested positive for the presence of fentanyl.

8. During early June 2026, Taste again retuned to meet with the UCs in the Dayton, Ohio area.  For instance, on one occasion, Taste again sold additional firearms to the UCs, including a second Glock fitted with a conversion device or switch (i.e., a machinegun).

9. Through these various transactions described above, Taste and one or more UCs had conversations in which they discussed Taste's background and affiliations.  For instance, Taste represented that he was a member of the 41 Boyz, an organization that law enforcement knows to sell drugs and engage in violence in the Dayton, Ohio area.  Taste explained that, in addition to selling drugs, the 41 Boyz also provided protection or security services for other drug traffickers.  Taste also explained that his father was a major drug trafficker with direct drug connections to Mexico (e.g., cartel drug sources in Mexico).  Taste claimed that, on occasion, his father received kilograms of controlled substances from his drug source every month.

10. Based on Taste's sale of drugs and firearms as well as indication that his group operated as armed security for drug traffickers, the UC asked Taste if he or others whom Taste knew might be interested in working as armed security during a drug transaction in the Dayton, Ohio area.  The UC explained that his purported drug organization planned to sell 5 kilograms of cocaine to a biker gang.  The UC told Taste that, on a previous occasion, the UC met with the biker gang to provide a quarter kilogram sample, and the bikers were armed during that transaction.  The UC indicated that, since the UC's organization was new to Dayton, the UC

4

wanted armed security to protect the UC and the 5 kilograms of cocaine during the planned drug transaction. Taste agreed to provide armed security for the drug deal, indicating that he and others had provided similar services in the past.

## C. Taste, Scott, and Yates Bring Real Firearms to Protect a Purported Drug Transaction.

11. On or about June 9, 2026, the UC contacted Taste to confirm that he was still willing to serve as armed protection for the planned drug deal. When Taste indicated that he was willing, the UC directed Taste and Taste's security team to meet the UC at location south of Dayton, Ohio.

12. On or about June 9, 2026, Taste, Anthony Scott, and a man identified as Tony Yates arrived at the meet location in a vehicle. (Law enforcement recognized Yates from a known photograph of him). The UC approached the vehicle and observed that each of Taste, Scott, and Yates was in possession of a firearm. Based on the UC's training and experience with firearms, he recognized the weapons in possession of these individuals to be real. The UC again explained the role that Taste, Scott, and Yates would serve – namely, protecting him and the kilograms of purported cocaine during the planned drug sale. The UC also advised that there would be no hard feelings if Taste, Scott, and Yates did not want to proceed with the protection. When Taste, Scott, and Yates confirmed their understanding of this plan and their willingness to proceed with it, the UC directed the men to the location of the purported drug deal – namely, a motel room in Moraine, Ohio. Taste, Scott, and Yates proceeded to the location of the planned drug transaction. It should be noted that, when speaking with Scott, the UC indicated that the UC may have seen Scott during an earlier transaction (i.e., the sale of the machine gun and fentanyl during May 2026). Scott confirmed that he had been at the deal and knew what had transpired; he indicated that he stayed in the car because he was taking care of

5

other business (e.g., arranging other drug sales) for he and Taste.

13. Once there, armed with firearms – namely, handguns and an AR-style pistol – Taste, Scott, and Yates accompanied the UC to the motel room. The room contained five brick shaped objects that the UC represented to the men as five kilograms of cocaine. When Taste, Scott, and Yates all positioned themselves with their guns brandished, the UC explained that the UC did not want the drug purchasers to think that they were being robbed and asked the three men to display their firearms less aggressively. Around this time, Yates placed a pillowcase or sheet over the AR-style pistol that he was holding. Taste positioned his firearm behind his back while Scott tucked his hand holding the firearm closer to his body. Soon thereafter, the purported drug purchasers arrived in the room. After confirming the amount of drugs (five kilograms of cocaine), the purported sale occurred, and the alleged drug buyers removed the five alleged kilograms of cocaine from the room. The UC thanked Taste, Scott, and Yates for successfully keeping the deal safe. All of the men then left the motel room.

14. After this purported drug transaction, Taste engaged in a conversation with the UC and explained that he (Taste) appreciated how the UC handled his alleged drug business. Taste indicated a willingness to engage in further work with the UC, including introducing him to his drug trafficking father.

15. Based on the foregoing, I believe that, on or about June 10, 2026, Taste, Scott, and Yates knowingly and intentionally worked together to provide armed security for a purported 5 kilogram sale of cocaine. When arriving at the initial meet location, the three men indicated that they understood why they were there and what was about to transpire – namely, a drug deal that they would protect with firearms. As indicative of their intent to facilitate the drug sale, each man arrived armed with a real firearm and willingly traveled to the location of the

6

purported drug transaction.   When arriving in the motel room, the men initially brandished their firearms, further confirming that they intended to protect and ensure the security of this drug transaction.   Therefore, I believe that Taste, Scott, and Yates knowingly and intentionally conspired to possess with intent to distribute and to distribute 5 kilograms or more of cocaine. They also used and carried firearms during and in relation to that drug trafficking crime.

16.     Based on the facts set forth in the Affidavit, I believe there is probable cause to issue criminal complaints.

*Matthew Voytek*

Matthew Voytek
Special Agent
ATF

Sworn and subscribed before me on this
12th day of June 2026.

HONORABLE PETER B. SILVAIN, JR.
UNITED STATES MAGISTRATE JUDGE

7